IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

v.                          Case Nos.:     5:11cr42/RH/GRJ
                                           5:15cv119/RH/GRJ

AVINIE MAURICE BATES, III,

      Petitioner.

_____

## ORDER, REPORT AND RECOMMENDATION

      This matter is before the court upon Petitioner's Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in
Federal Custody and separate memorandum of law.   (ECF Nos. 370, 374.)
The Government has filed a response, and Petitioner has filed a reply.
(ECF Nos. 383, 387.)   Petitioner has also filed numerous motions which
are pending and will be addressed below.   (*See* ECF Nos. 396, 398, 399,
400, 402, 408, 410, 411, 413, 417, 418, 419, 422, 429, 432.)   The case
was referred to the undersigned for the issuance of all preliminary orders
and any recommendations to the district court regarding dispositive
matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed.
R. Civ. P. 72(b).   After a review of the record and the arguments

presented, the Court concludes that Petitioner has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b) Governing Section 2255 Cases.

## I.   BACKGROUND

On December 6, 2011, Petitioner Avinie Maurice Bates, III and four others were charged in a one-count indictment with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343.   (ECF No. 1.)   The indictment alleged that the defendants participated in an "equity strip" scheme which is a variation of mortgage fraud.   In an equity strip scheme, the perpetrators enter a contract to purchase a property from a seller at an original sales price; prior to closing on the property, the perpetrators assign the contract to a "straw buyer," who agrees to take out a mortgage to purchase the property for more than the original sales price (the "inflated sales price"); then the seller is paid the original sales price and the perpetrators obtain the difference between the original sales price and the inflated sales price (the "equity strip").   (*See id.* at 1-2.)   In an equity strip scheme, a mortgage broker makes material misrepresentations on a loan application to qualify the straw buyer to purchase the property at the inflated sales price.   The sale of the property is facilitated by a title company by one of

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

its employees who is an escrow agent. The perpetrator escrow agent facilitates the closing on the property and, among other things, receives funds from a lender and disburses those funds and delivers the property to the buyer. An equity strip scheme "puts the loan at greater risk because the loan originates with negative equity in the property, the true buyer is concealed, and the straw buyer's credit-worthiness is misrepresented." (*Id.* at 3.)

Petitioner owned and operated Right Choice Housing, LLC ("Right Choice"), a real estate investment company located in Miami, Florida. One of his coconspirators was the attorney for Right Choice; two others were mortgage brokers and the fourth coconspirator, Meredith King, was an escrow agent employed by Blue Dolphin Title, LLC, a title company located in Panama City Beach, Florida. "Between in or about late 2005 and in or about mid-2006," Petitioner and others acting on his direction entered into contracts to buy properties, recruited straw buyers and effectuated sales pursuant to an equity strip scheme. (*Id.* at 4.) In total, the misrepresentation of the conspirators qualified straw purchasers for over $8.7 million in loans relating to nine real estate transactions, yielding over $1.7 million in "cash back" received by the conspirators and ultimately

resulting in the foreclosure of the properties due to the failure of Petitioner and Right Choice to make the mortgage payments. (*Id.* at 6-7.) The specific charge against Petitioner and the other conspirators was that they knowingly conspired to devise this scheme to defraud and obtain money and property by means of material false and fraudulent pretenses and misrepresentations, and in executing this scheme, they caused wire communications to be transmitted in interstate commerce. (*Id.* at 7.)

Petitioner's four coconspirators pleaded guilty, and Petitioner was found guilty after a jury trial. On September 14, 2012, the court sentenced Petitioner to 147 months' imprisonment and later ordered him and his coconspirators to pay restitution to various victims. (ECF Nos. 202, 277.) On appeal, the Eleventh Circuit Court of Appeals affirmed Petitioner's conviction and sentence, rejecting his argument that the indictment was filed outside of the statute of limitations, as well as his insufficiency of evidence claim. *United States v. Bates*, 567 F. App'x 821 (11th Cir. 2014)(*per curiam*) (*see* ECF No. 344.) Petitioner timely filed the instant § 2255 motion.

## II.   ANALYSIS

### A. General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   *Nyhuis*, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects"). Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the petitioner establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a petitioner must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [petitioner's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa."). In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

*Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The

likelihood of a different result must be substantial, not just conceivable."

*Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).   For

the court to focus merely on "outcome determination," however, is

insufficient; "[t]o set aside a conviction or sentence solely because the

outcome would have been different but for counsel's error may grant the

defendant a windfall to which the law does not entitle him."   *Lockhart v.*

*Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*,

611 F.3d 740, 754 (11th Cir. 2010).   A petitioner therefore must establish

"that counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting

*Strickland*, 466 U.S. at 687).

To establish ineffective assistance, a petitioner must provide factual

support for his contentions regarding counsel's performance.   *Smith v.*

*White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory

allegations of ineffective assistance are insufficient to satisfy the *Strickland*

test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34

(11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir.

2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson*

*v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

The law is well-established that counsel is not ineffective for failing to

preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d

1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*,

536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether

the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of*

*Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve

meritless *Batson* claim not ineffective assistance of counsel);   *Lattimore v.*

*United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not

ineffective for failing to make a meritless objection to an obstruction

enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002)

(counsel was not ineffective for failing to raise issues clearly lacking in

merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not

ineffective for failing to object to "innocuous" statements by prosecutor, or

accurate statements by prosecutor about effect of potential sentence);

*Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not

ineffective for failing to make meritless motion for change of venue);

*Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a petitioner must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*,

767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

## III. Petitioner's Claims

### A. *Ground One—Failure to Provide Effective Assistance of Counsel*

Petitioner first contends that his trial counsel was constitutionally ineffective when she failed to object or have the court establish the final act of the conspiracy and failed to schedule an evidentiary hearing on this issue.   (*See* ECF No. 370 at 5; ECF No. 374 at 4-8.)

Relevant to this claim are two checks related to the closing of two of the properties involved in the equity strip scheme:   1501 Trout Lane and 1522 Trout Lane.   When disbursing the sales proceeds at the closing of 1501 Trout Lane, on or about March 3, 2006, coconspirator King issued a check in the amount of $303.75 ("Fidelity Check 1") to Fidelity National Title

Insurance Company ("Fidelity"), the title insurance underwriter for Blue

Dolphin Title.   (*See* ECF No. 1 at 17.)   On or about December 12, 2006,

Fidelity deposited Fidelity Check 1 into its account at SunTrust Bank.   On

or about December 12, 2006, Regions Bank transferred, by wire

transmission, the funds drawn on the check from the Blue Dolphin Title

escrow account to SunTrust Bank through the Federal Reserve System.

When disbursing the sales proceeds at the closing of 1522 Trout

Lane, on or about April 21, 2006, coconspirator King issued a check in the

amount of $2,151.88 ("Fidelity Check 2") to Fidelity.   (*See* ECF No. 1 at

23.)   On or about December 12, 2006, Fidelity deposited Fidelity Check 2

into its account at SunTrust Bank.   On or about December 12, 2006,

Regions Bank transferred, by wire transmission, the funds drawn on the

check from the Blue Dolphin Title escrow account to SunTrust Bank

through the Federal Reserve System.   At trial the Government maintained

that the conspiracy did not end until these two checks were deposited in

Fidelity's bank account on or about December 12, 2006.

Petitioner argues that the conspiracy ended when the two respective

properties in Panama City Beach closed and funds were disbursed

pursuant to the equity strip scheme, *i.e.*, on March 7 and April 19, 2006,

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

respectively, not when Fidelity (who was not one of the coconspirators)

deposited the checks in its SunTrust Bank account.   (ECF No. 374 at 5.)

Thus, according to Petitioner, the indictment, returned on December 6,

2011, fell outside of the applicable five-year statute of limitations, and his

trial counsel was ineffective in failing to establish this fact at trial.

In rejecting Petitioner's claim as to the statute of limitations on direct

appeal, the Eleventh Circuit held:

> Relevant to this case, a conspiracy is considered to have continued
> for as long as its purposes have not been accomplished, or until the
> last overt act has been committed by any of the conspirators. *United
> States v. Arias*, 431 F.3d 1327, 1340 (11th Cir. 2005).
>
> "However, if a conspirator establishes the affirmative defense of
> withdrawal, the statute of limitations will begin to run at the time of
> withdrawal." *Id.*   A defendant seeking to establish the affirmative
> defense of withdrawal from the conspiracy has the substantial burden
> of proving that: (1) he took affirmative steps, inconsistent with the
> objectives of the conspiracy, to disavow or to defeat the objectives of
> the conspiracy; and (2) he made a reasonable effort to communicate
> those acts to his co-conspirators or disclosed the scheme to the
> proper authorities. *United States v. Starrett*, 55 F.3d 1525, 1550 (11th
> Cir. 1995). The defense is not available if the defendant merely
> ceased his participation in the conspiracy. *United States v. Hogan*,
> 986 F.2d 1364, 1375 (11th Cir. 1993).
>
> Our review of the record shows that Bates did not establish he
> withdrew from the conspiracy. Therefore the statute of limitations did
> not run prior to the return of the indictment. The only evidence offered
> by Bates of his withdrawal is a letter sent to the Florida Secretary of
> State's office indicating his resignation as an officer of the real estate

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

investment company implicated in the conspiracy. But again, mere cessation of participation in the conspiracy is not sufficient to establish withdrawal. *See Hogan*, 986 F.2d at 1375. Bates has not identified any evidence that he took affirmative steps to disavow or defeat the objectives of the conspiracy, or shown that he made a reasonable effort to communicate those acts to his co-conspirators or disclose the scheme to the police. *See Starrett*, 55 F.3d at 1550. Because the evidence only shows that Bates ceased participating, not that he withdrew from the conspiracy, the charge against Bates was not barred by the statute of limitations.

*Bates*, 567 F. App'x at 821-22.

The record reflects that Petitioner rested his case without presenting evidence and moved for a judgment of acquittal based on the statute of limitations. (ECF No. 252 at 177.) Petitioner's trial counsel argued that Petitioner resigned from Right Choice on November 6, 2006, and had ceased contact with his coconspirators prior to that date, so his involvement in the conspiracy ended five years before the issuance of the indictment on December 6, 2011. (*Id.* at 177-191.) After hearing argument of counsel, the court denied the motion as a matter of law, finding that the deposits of Fidelity Checks 1 and 2 were acts by a participant in furtherance of the conspiracy. (*Id.* at 191-92.)

The uncontested trial testimony established that Fidelity Checks 1 and 2, which were related to title insurance premiums, were deposited on

or about December 12, 2006. The court found that the deposit of these checks were acts made in furtherance of the conspiracy. The Eleventh Circuit affirmed this decision, determining that the statute of limitations did not begin to run until December 13, 2006, making the indictment returned on December 6, 2011, timely.

Petitioner's counsel argued in her motion for acquittal that the conspiracy ended for Petitioner before these checks were deposited; however, the trial court rejected this argument as a matter of law. Petitioner's trial counsel, Tanya Higgins, is an experienced trial attorney who stated in an affidavit attached to the Government's response that she was at the time of trial and currently "unaware of any witnesses that could aid Mr. Bates in his defense" and that she "presented the arguments that could be made and had no other evidence to present to bolster his withdrawal from the conspiracy." (ECF No. 383, Exh. 2 at 2.)

The law addressing ineffective assistance of counsel is addressed *supra*. Petitioner has not shown that his counsel's performance was unreasonable or that she represented him in a way that no competent counsel would have. In addition, the presumption that counsel's conduct was reasonable is even stronger given her experience. Petitioner has not

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

demonstrated deficient performance or prejudice under *Strickland*. Finally, given the Eleventh Circuit's rejection of Petitioner's statute of limitations argument on the merits on appeal, he cannot prevail on a related ineffective assistance of counsel claim. Therefore, Petitioner is not entitled to relief on this ground.

### B. *Ground Two—Denial of "Due Process"*

Petitioner next contends that he was denied due process because the jury did not hear evidence as to every element of the crime because there was no evidentiary hearing as to the final act of the conspiracy. (*See* ECF No. 370 at 6; ECF No. 374 at 8.) Petitioner argues that the main element of the crime was the deposit of the checks that allegedly caused the conspiracy to continue past the date of the indictment, and that there was no evidence that Petitioner or the other coconspirators were responsible for the last overt act that is suggested. Petitioner also argues that the jury should have been instructed that an overt act must be knowingly committed and the conspirators need to be willfully participating in the scheme. The Government responds that Petitioner's argument is inconsistent with the record and that the Eleventh Circuit found that payments were made in

furtherance of the conspiracy on December 13, 2006; thus, that issue was resolved on direct appeal.   (ECF No. 383 at 18-19.)[1]

The trial transcript reflects that testimony as to the deposit of Fidelity Checks 1 and 2 was presented to the jury.   (*See* ECF No. 242 at 121-122.)   Therefore, Petitioner's jury did hear evidence as to what he terms "the very element" of the crime—"the checks, that were cashed on December 12, 2006."   (ECF No. 374 at 10.)   Therefore, Petitioner has not shown any denial of due process on this ground.

---

[1] In rejecting a sufficiency of the evidence claim on direct appeal in this case, the Eleventh Circuit held:

> We also reject Bates's second argument that there was a material variance between the evidence at trial and the indictment. In determining whether a material variance occurred a court considers (1) whether the evidence at trial established facts materially different than those charged in the indictment; and (2) whether the defendant suffered substantial prejudice as a result. *United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012).

> Contrary to Bates's argument, the evidence at trial did not establish facts materially different from those charged in the indictment. The indictment charged that the conspiracy lasted until December 12, 2006, and the evidence showed that payments were made in furtherance of the conspiracy on December 13, 2006. Because, as discussed above, Bates failed to establish that he withdrew from the conspiracy before the final December 13, 2006 payments, he has failed to demonstrate a material variance.

*Bates*, 567 F. App'x at 822.

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

In his reply, Petitioner appears to raise a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), contending that the Government withheld case law pertaining to when a conspiracy has ceased.    *Brady* held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment."    *Id.* at 87.    Case law is not evidence, and Petitioner's *Brady* claim is plainly without merit.    In his reply, Petitioner also raises the same ineffective assistance of trial counsel claim that he raised in Ground One, which has been denied.    (ECF No. 387 at 14-18.)

Finally, Petitioner argues that he was denied due process because he could not choose his own attorney, and that to the extent this claim is procedurally defaulted for failure to raise it on direct appeal, he claims that he was unable to contact his lawyer and that his "counsel failed to respond to my request."    (*See* ECF No. 370 at 7-8; ECF No. 387 at 18.)

The record reflects that Petitioner did not raise this claim on appeal. As discussed *supra*, absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the petitioner establishes (1) cause for not

raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622.

Petitioner has not demonstrated cause or prejudice which would excuse the procedural fault of this claim. Johnathan Dingus, Petitioner's appellate attorney, stated in an affidavit accompanying the Government's response as follows:

> In claim 2, Bates says that a certain claim was not capable of being raised on direct appeal because he could not contact me. It should be noted that I met with Bates several times during my representation, and the issues that he wanted raised by me on direct appeal are the issues that are framed up in the initial brief of the Appellant (Bates). If error occurred here, it was not by my doing.

(ECF No. 383, Exh. 1 at 1.)

In addition, Petitioner's claim is without merit. Criminal defendants do not have the right to choose their own court- appointed attorneys. *See United States v. Gray*, 565 F.2d 881, 887 (5th Cir. 1978) ("It is a settled principle that the right to counsel of one's choice is not absolute as is the right to the assistance of counsel.").[2] Due process requires that a

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

defendant be afforded a fair and reasonable opportunity to obtain the assistance of counsel of his choice to prepare and conduct his defense, and this constitutional mandate is satisfied so long as there is no arbitrary action prohibiting the effective use of such counsel.   *See Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978).

Petitioner has not demonstrated a denial of due process with regard to the evidence presented at his trial.    Therefore, Petitioner is not entitled to relief on this claim.

### C. *Ground Three—Sentencing Errors*

Petitioner argues that the court erred in not having the victims, who received restitution, show a "true calculation of loss," which resulted in their receiving a windfall which constitutes a cruel and unusual punishment under the Eighth Amendment.    (*See* ECF No. 370 at 8; ECF No. 374 at 10-13.)    The Government responds that this claim is procedurally barred because it was not raised on direct appeal.

To the extent that Petitioner is raising a claim that the court erred in calculating the restitution ordered in his case, this claim is not cognizable in this proceeding and will not be addressed.   *See Mamone v. United States*, 559 F.3d 1209, 1210-11 (11th Cir. 2009)(holding that a federal prisoner

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

cannot utilize § 2255 to challenge a restitution order even if other cognizable claims are raised).

In his memorandum in support, Petitioner also raises a claim of ineffective assistance of appellate counsel with respect to this issue. Petitioner's appellate counsel, Mr. Dingus, who also represented him at the restitution hearing, responded to this claim as follows:

> It should be noted that there was a restitution hearing that lasted several hours, and the prosecutor took great pains to prove up the amounts of loss due to the equity stripping actions of all of the various defendants here. This issue was not briefed on appeal for two reasons. First, the law in the Eleventh Circuit is that the court may estimate the loss caused by the defendant, and second, I believed that the only error that was worthy of being briefed was the issue that was briefed. The issue briefed was that the government did not prove their allegations (motion for judgment of acquittal).

(ECF No. 383, Exh. 1 at 1.) Appellate counsel is not ineffective for failing to raise an issue which he or she deems frivolous. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues."); *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). Petitioner

has not demonstrated deficient performance or prejudice under *Strickland*. Therefore, Petitioner is not entitled to relief on this ground.

Petitioner's "Motion to Amend 28 U.S.C. 2255 (ECF No. 370) Adding Additional Ground Five (5)" (ECF No. 419) also relate to the issue of restitution. Petitioner essentially contends that he is entitled to release because his attorney failed to object to the manner in which the Government determined the amount of restitution. (ECF No. 419 at 1; ECF No. 419-1 at 3.) Petitioner's perception of irregularity in the restitution calculation does not establish a right to release and as such the relief requested in the motion to amend must be denied.

Similarly, Petitioner's "Motion to Correct Illegal Restitution Order, or Defective Restitution Order, with the Law of Mandatory Victim Restitution Act (MVRA), as a Legal Guide" (ECF No. 422) is not a proper subject of a § 2255 motion and does not entitle Petitioner to release. The motion is therefore due to be denied .

### D. *Ground Four—Unconstitutional Conviction and Sentencing*

Petitioner contends in his last claim that his conviction and sentence are unconstitutional in light of *United States v. Arias*, 431 F.3d 1327, 1340 (11th Cir. 2005)(noting that the statute of limitations will not begin to run

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

until the final act of the conspiracy has occurred). (*See* ECF No. 370 at 9; ECF No. 374 at 13-20.)[3] In this ground Petitioner reframes the same argument he has made throughout the instant motion, that the conspiracy ended when the final properties involved in the equity stripping scheme closed and the conspirators achieved their objectives, not with the deposit of Fidelity Checks 1 and 2. The Government responds that this issue was decided adversely to Petitioner in his direct appeal.

As discussed *supra*, a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. The Eleventh Circuit decided this claim adversely to Petitioner on direct appeal, and this same issue cannot be re-litigated in his § 2255 proceeding. Therefore, Petitioner is not entitled to relief on this ground.

## IV.   Conclusion

For all of the foregoing reasons, the court finds that Petitioner has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he

---

[3] Although not raised in Ground Four of his § 2255 motion, Petitioner argues in his memorandum in support that the court erred in calculating the restitution ordered for his victims. (*See* ECF No. 374 at 14-18.) As discussed *supra*, Petitioner cannot utilize Section 2255 to challenge his restitution, so this claim will not be addressed.

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

shown that an evidentiary hearing is warranted. Therefore Petitioner's motion should be denied in its entirety.

## Other Pending Motions

Petitioner has filed ten motions that, while captioned in various ways, raise the same or similar claims that he raises in the instant § 2255 motion, *i.e.*, that he is entitled to relief because the indictment was filed outside of the applicable statute of limitations. (ECF Nos. 396, 400, 408, 410, 411, 413, 417, 418, 429, 432.) These motions have no merit, are moot in light of the recommendation herein and no further discussion is warranted.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529

U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).   Therefore, it is also recommended that the court deny a

certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the

final order, the court may direct the parties to submit arguments on whether

a certificate should issue."   If there is an objection to this recommendation

by either party, that party may bring this argument to the attention of the

district judge in the objections permitted to this report and recommendation.

Accordingly, it is hereby **ORDERED**:

1.   The following motions are **DENIED as moot** in light of the

recommendation herein:   (1) letter requesting reconsideration of

Petitioner's Motion to Release on Bond Pending a decision on Petitioner's

§ 2255 motion (ECF No. 396); (2) "Motion to Vacate Sentence in the

Interest of Justice Governing Rule 52(b) Violation of Defendant's

Substantial Rights" (ECF No. 400); (3) "Motion Claim of Factual Innocence"

(ECF No. 408); (4) "Motion to Grant Order in Favor of Defendant on

Grounds that Substantial Rights were Violated in the Interest of Justice as it

Relates to Doc 400 & 401" (ECF No. 410); (5) "Motion to Compel to Answer

as a Matter of Justice, Integrity, the Constitution of the United States,

Public Opinion, Truth (Docs 400, 401, 405, 410) and Create a Non-Prejudices Situation" (ECF No. 411); (6) Letter Motion seeking a court order on various pending motions (ECF No. 413); (7) "Motion of Notice of Appeal to Amend Judgment Under 18 U.S.C. 3742(a)(1)" (ECF No. 417); (8) "Motion for Relief Expeditiously" under Fed. R. Civ. P. 60(b)(6) (ECF No. 418); (9) "Exigency Motion" under Fed. R. Civ. P. 60(b)(4) to set aside his judgment of conviction (ECF No. 429); and (10) "Notice Motion, To Amend (Construe)60(b)(4) Motion Entered Into This Court, To A Nunc Pro Tunc Motion for Writ of Error Coram Nobis Under 28 U.S.C. 1651 All Writs." (ECF No. 432.)

2.    Petitioner's "Application to Proceed Without Prepayment of Fees and Affidavit" (ECF No. 398) is **DENIED as moot** because no filing fee is required in cases filed under Section 2255.

3.    Petitioner's "Motion Request Asking the Clerk to Release Grand Jury Transcript to Defendant" (ECF No. 399) is **DENIED** as he has shown no basis for the release of same.

4.    Petitioner's "Motion to Transfer Case to United States Southern District of Florida, Miami Division Pursuant to Fed. R. Crim. P. 18 and

21(b)" (ECF No. 402) is **DENIED** because jurisdiction is proper in the Northern District of Florida, where Petitioner was convicted.

5.   Petitioner's "Motion to Amend 28 U.S.C. 2255 Doc (370) Adding Additional Ground Five (5)" (ECF No. 419) is granted only to the extent the court has considered, and rejected, the claim for relief raised therein.

6.   Petitioner's "Motion to Correct Illegal Restitution Order, or Defective Restitution Order, with the Law of Mandatory Victim Restitution Act (MVRA), as a Legal Guide" (ECF No. 422) is **DENIED** because it does not entitle Petitioner to release.

Based on the foregoing, it is also respectfully **RECOMMENDED** that:

1.   Petitioner's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" (ECF No. 370) should be **DENIED**.

2.   A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 25th day of May, 2017.

*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

Case Nos.: 5:11cr42/RH/GRJ; 5:15cv119/RH/GRJ

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.